OPINION OF THE COURT
Thomas P. Flaherty, J.
The first-impression question presented on this motion to dismiss is whether subdivision 5 of section 677 of the Insurance Law, enacted in 1973, requiring motor vehicle insurers to return excess profits to policyholders had become effective prior to the commencement of the underlying action herein. For the reasons stated below, this question must be answered in the negative and the complaint dismissed.
In 1973 the State Legislature enacted the Comprehensive Automobile Insurance Reparations Act (Insurance Law, § 670 et seq.), commonly referred to as the No-Fault *943 Law. One of the provisions of the act, subdivision 5 of section 677 (hereinafter Excess Profits Statute), requires insurers to refund or to credit to policyholders any excess profits which they would realize through the operations of the No-Fault Law for the 10-year period from January 1, 1974 through December 31,1983. The Excess Profits Statute was subsequently amended in 1974, 1977, 1979 and 1982.
To date, the insurance companies of New York State have made no refunds or credits pursuant to the Excess Profits Statute. By complaint dated August 2, 1982, the plaintiffs, in a purported class action pursuant to CPLR article 9, seek to represent at least 1,000,000 present and former holders of automobile insurance policies written in the State since February 1, 1974 against an alleged defendant class estimated at less than 1,000 insurance companies. Some 31 insurance companies have been listed in the caption of the complaint. The original complaint was subsequently amended under date of October 27,1982, and all references hereinafter are to that amended complaint. Although plaintiffs set forth five separately numbered causes of action, all their claims are grounded on an alleged violation of the Excess Profits Statute. Plaintiffs seek an award of some $96,000,000, an amount allegedly equal to the excess profits retained by the defendants, plus interest. Plaintiffs also seek to enjoin the defendants from exerting undue influence over the State Superintendent of Insurance (Superintendent) in his promulgation of regulations and determination with respect to the Excess Profits Statute; an appointment of independent auditors or accountants to examine the accounts or records of the defendants; and imposition of a constructive trust over the aforesaid $96,000,000.
Before the court are the motions by various of the defendants to dismiss the complaint in its entirety for failure to state a cause of action (CPLR 3211, subd [a], par 7), for lack of subject matter jurisdiction (CPLR 3211, subd [a], par 2), for failure to join a necessary party (CPLR 3211, Subd [a], par 10), and for failure to allege misrepresentation and undue influence with requisite detail (CPLR 3016, subd [b]).
*944 As all five causes of action are grounded upon an alleged violation of the Excess Profits Statute, the court can dispose of the instant motions on the single ground that the complaint fails to state a cause of action. Accordingly, the other grounds asserted for dismissal need not be addressed.
The thrust of plaintiffs’ complaint is that despite the mandates of the Excess Profits Statute, none of the defendants have refunded or credited any excess profits. The defendants counter that the Excess Profits Statute had not been violated prior to the commencement of this action, since the mandates of the statute were not defined sufficiently to render it effective or impose any duty whatsoever upon them. A careful reading of the Excess Profits Statute warrants adoption of the defendants’ position. Subdivision 5 of section 677 of the Insurance Law provides as follows: “In accordance with regulations prescribed by the superintendent, each insurer issuing policies which are subject to this article, including policies of motor vehicle personal injury insurance or policies of motor vehicle property damage liability insurance or insurance for loss or damage to a motor vehicle shall establish a fair, practicable and nondiscriminatory plan for refunding or otherwise crediting to those purchasing such policies their share of the insurer’s excess profit, if any, on such policies. An excess profit shall be a profit beyond such percentage rate of return on net worth attributable to such policies, as computed in accordance with the regulation required by subdivision three of section one hundred seventy-eight of this chapter, as is determined by the superintendent to be so far above a reasonable average profit as to amount to an excess profit (taking into consideration the fact that losses or profits below a reasonable average profit will not be recouped from such policyholders). Each such plan shall apply to policy periods between January first, nineteen hundred seventy-four and December thirty-first, nineteen hundred eighty-three. In prescribing such regulations the superintendent may limit the duration of such plans, waive any requirement for refund or credit which he determines to be de minimus or impracticable, adopt forms of returns which shall be made to him in order to establish the amount of any refund or credit due, establish periods and times for the *945 determination and distribution of refunds and credits, and shall provide that insurers receive appropriate credit against any refunds or credits required by any such plan for policyholder dividends and for return premiums which may be due under rate credit or retrospective rating plans based on experience.” (Emphasis supplied.)
Those portions emphasized clearN indicate that the prescription of regulations by the Superintendent is a condition precedent to any duty of an insurance company to refund or credit excess profits. Both logic and the language of the statute make the Superintendent’s regulations a sine qua non for the return of any profits.
Absent these regulations, the term “excess profits” stands undefined and consequently without any effect. Given the complexity of this subject matter, not to mention the clear language of the statute, neither the defendants nor this court could breathe life and force into the Excess Profits Statute without the direction of the Superintendent’s regulations.
Defendants properly rely on the court’s holding in Matter of Abrams v New York City Tr. Auth. (39 NY2d 990). In that article 78 proceeding, the petitioner alleged certain violations of the New York City Noise Control Code (Administrative Code of City of New York, ch 57, part III). Finding that the Noise Control Code provided for its application to rapid transit systems only after the adoption of standards, the Court of Appeals held that there were no specific illegal acts or omissions for which judicial correction could be sought since the petition did not allege and the petitioner did not submit any proof to the effect that such required standards had been adopted. The same situation is presented by the case at Bench, warranting the same determination.
Plaintiffs herein have not submitted any proof that the Superintendent completed his task of prescribing regulations (Insurance Law, § 677, subd 5) prior to the commencement of this action. Indeed, definitive proof that the required regulations were not prescribed prior to the commencement of this action has been supplied by the Superintendent of Insurance who, on December 23, 1982, promulgated Regulation No. 105 (11 NYCRR part 166) enti *946 tied “Treatment of Excess Profits in Motor Vehicle Insurance”. Regulation No. 105, consisting of eight pages of regulations followed by 18 pages of explanatory notes, sets forth for the first time a detailed approach for the measurement of profitability and for determination of excess profits pursuant to the mandate of subdivision 5 of section 677 of the Insurance Law.
Since no definable duty had been placed on the defendant insurance companies prior to the promulgation of Regulation No. 105, the complaint must be dismissed in its entirety for failure to state a cause of action.